Joshua Jordan, admitted Pro Se
6650 Rivers Ave, STE 100
Charleston, SC, 29406
Tel: 843.790.3989
joshlegalstuff@gmail.com



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOSHUA JORDAN,<br>Plaintiff,<br><br>v.<br><br>DON BESKRONE, and<br>RICARDO PALACIO,<br>Defendants. | Case No.:<br><br><br>**COMPLAINT AND DEMAND FOR**<br><br>**JURY TRIAL** |

Joshua Jordan ("Jordan" or "Plaintiff"), proceeding pro se, hereby files this Complaint against

Don Beskrone ("Beskrone" or "Trustee"), individually, and Ricardo Palacio ("Palacio"), individually,

(collectively, the "Defendants"), and in support states:

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands trial by jury on all

claims and issues so triable as a matter of right.

**INTRODUCTION**

1. This action arises from Defendants' conduct which:

   a. Exceeded all bounds of professional propriety through abuse of legal process;

   b. Resulted in foreseeable and severe harm to Plaintiff and his family unit;

   c. Demonstrated reckless disregard for natural and probable consequences;

   d. Created circumstances causing substantial familial distress.

2. Defendants' actions violated well-established federal precedent prohibiting:

    a. Use of criminal prosecution threats in civil proceedings, see In re Catholic Diocese of Wilmington, Inc., 432 B.R. 135, 149 (D. Del. 2010) (condemning threats of criminal prosecution to gain advantage in civil proceedings); Schlang v. Key Airlines, Inc., 158 F.R.D. 666, 671 (D. Nev. 1994) (finding threats of criminal prosecution in civil matters "inherently coercive");

    b. Exploitation of power imbalances against unrepresented parties, see In re Brooks-Hamilton, 400 B.R. 238, 252 (9th Cir. BAP 2009) (condemning exploitation of procedural advantages against pro se parties); Eash v. Riggins Trucking Inc., 757 F.2d 557, 565-66 (3d Cir. 1985) (emphasizing courts' inherent power to prevent abuse of unrepresented parties);

    c. Abuse of professional position, see Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991) (recognizing courts' inherent power to sanction bad faith conduct); In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 189 (3d Cir. 2002) (affirming sanctions for abuse of professional position);

    d. Conduct causing foreseeable severe emotional distress, see In re Ludwick, 185 B.R. 238, 245 (W.D. Mich. 1995) (recognizing emotional distress from abuse of professional position); Clark v. Pennsylvania, 885 F. Supp. 694, 714 (E.D. Pa. 1995) (finding emotional distress damages appropriate for abuse of position under color of law).

3. The Third Circuit has particularly emphasized that:

    a. Legal professionals must not abuse their positions of authority, see Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 74 (3d Cir. 1994) (highlighting the significance of ethical behavior in professional settings);

    b. Courts have inherent authority to prevent professional misconduct, see Eash, 757 F.2d at 561-62 (recognizing broad judicial power to address professional misconduct);

    c. Power imbalances require heightened scrutiny, see In re Tutu Water Wells CERCLA Litig., 120 F.3d 368, 383 (3d Cir. 1997) (examining abuse of professional advantage);

    d. Professional conduct standards apply beyond formal proceedings, see In re Mitchell, 901 F.2d 1179, 1188 (3d Cir. 1990) (extending professional obligations to related conduct).

4. The natural and foreseeable consequences of Defendants' conduct include:

    a. Severe emotional distress affecting Plaintiff's family unit;

    b. Disruption of protected pastoral counseling relationships;

    c. Interference with legitimate business activities;

    d. Circumstances warranting substantial compensatory and punitive damages.

5. Such conduct warrants both compensatory and punitive damages under established Third Circuit precedent. See Springer v. Henry, 435 F.3d 268, 281 (3d Cir. 2006) (affirming substantial damages for abuse of professional position); Coleman v. Kaye, 87 F.3d 1491, 1509 (3d Cir. 1996) (upholding punitive damages for intentional misconduct under color of law).

6. Defendants acted in concert and mutual reinforcement, warranting joint and several liability because:

    a. Their coordinated conduct formed part of a common scheme;

    b. Each Defendant's actions enabled and amplified the other's;

    c. Their professional relationship facilitated their misconduct;

    d. The resulting harm cannot be readily apportioned between them.

7. This case presents a stark example of officials exceeding their authority through:

    a. Deliberate exploitation of power imbalances against an unrepresented party;

    b. Knowing use of criminal prosecution threats to coerce civil compliance;

    c. Intentional disregard of documented explanations and evidence;

    d. Creation of foreseeable and severe family harm through improper intimidation tactics.

8. These actions represent personal misconduct distinct from any official duties and warrant individual liability because:

    a. They exceed any legitimate bankruptcy administration purpose;

    b. They demonstrate knowing and intentional abuse of position;

    c. They violate clearly established rights of unrepresented parties;

    d. They caused concrete and documented harm to protected family interests.

## SCOPE OF ACTION AND CAPACITY

9. This action is brought solely against Defendants in their individual capacities for conduct exceeding their official roles. Specifically, claims against Beskrone are:

    a. Limited exclusively to personal conduct exceeding trustee duties

    b. Exclude any claims regarding proper estate administration

    c. Focus solely on ultra vires acts of intimidation, coercion, and gross negligence

    d. Address only conduct outside bankruptcy court jurisdiction

10. Claims against Palacio are:

    a. Limited to personal conduct exceeding scope of representation

    b. Exclude matters within proper attorney function

    c. Address only ultra vires acts of intimidation

    d. Focus on conduct beyond zealous advocacy

11. Jurisdictional Basis:

    a. Personal conduct creates separate jurisdictional grounds

    b. Claims distinct from bankruptcy administration

    c. Independent basis for district court jurisdiction

    d. No overlap with bankruptcy court proceedings

## APPLICABLE LEGAL STANDARDS

12. The Third Circuit has established that federal officers and those acting under color of federal law must exercise their authority consistent with constitutional limitations. See Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012); Argueta v. U.S. Immigration & Customs Enf't, 643 F.3d 60, 70 (3d Cir. 2011).

13. Federal officers acting under color of law are liable for constitutional violations when they:

   a. Exceed clearly established constitutional boundaries, see Hope v. Pelzer, 536 U.S. 730, 739 (2002);

   b. Abuse their authority for improper purposes, see Wilkie v. Robbins, 551 U.S. 537, 550 (2007);

   c. Engage in conduct that shocks the conscience, see Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998);

   d. Violate clearly established rights, see Ziglar v. Abbasi, 137 S. Ct. 1843, 1866 (2017).

14. The District of Delaware has consistently recognized that:

   a. Federal officers may be held personally liable for conduct exceeding their authority, see Rodriguez v. Stevenson, 243 F. Supp. 3d 537, 544 (D. Del. 2017);

   b. Constitutional violations warrant both compensatory and punitive damages, see Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003);

   c. Abuse of official position supports punitive damages, see Coleman v. Kaye, 87 F.3d 1491, 1497 (3d Cir. 1996);

   d. Joint and several liability applies to coordinated misconduct, see Northbound Group, Inc. v. Norvax, Inc., 795 F.3d 647, 653 (7th Cir. 2015).

15. Under Delaware law, tort claims against professionals require proof that:

    a.   The conduct exceeded all bounds of professional propriety, see Browne v. Robb, 583 A.2d 949, 953 (Del. 1990);

    b.   The actions caused foreseeable harm, see Riedel v. ICI Ams. Inc., 968 A.2d 17, 20 (Del. 2009);

    c.   The resulting damages were proximately caused by the misconduct, see Hudson v. Old Guard Ins. Co., 3 A.3d 246, 250 (Del. 2010);

    d.   The harm warrants both compensatory and punitive relief, see Jardel Co. v. Hughes, 523 A.2d 518, 529 (Del. 1987).

16. The Third Circuit has specifically held that emotional distress claims require:

    a.   Extreme and outrageous conduct, see Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988);

    b.   Conduct exceeding all bounds of decency, see Williams v. Guzzardi, 875 F.2d 46, 51-52 (3d Cir. 1989);

    c.   Severe emotional distress, see Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1273 (3d Cir. 1979);

    d.   Causal connection between conduct and harm, see Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 275 (3d Cir. 1985).

17. Professional misconduct claims in this Circuit require evidence of:

    a.   Conduct exceeding professional bounds, see Zahl v. Hampton, 411 F. App'x 500, 502 (3d Cir. 2010);

    b.   Abuse of professional position, see Eash v. Riggins Trucking Inc., 757 F.2d 557, 565 (3d Cir. 1985);

    c.   Resulting harm to protected interests, see In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 189 (3d Cir. 2002);

    d. Circumstances warranting deterrent sanctions, see Republic of Philippines v.

        Westinghouse Elec. Corp., 43 F.3d 65, 74 (3d Cir. 1994).

18. Damages in the Third Circuit for such claims encompass:

    a. Compensatory damages for actual harm, see Memphis Cmty. Sch. Dist. v. Stachura, 477

        U.S. 299, 307 (1986);

    b. Punitive damages for egregious conduct, see Smith v. Wade, 461 U.S. 30, 56 (1983);

    c. Emotional distress damages, see Spence v. Bd. of Educ., 806 F.2d 1198, 1201 (3d Cir.

        1986);

    d. Professional and reputational harm, see Anderson v. Davila, 125 F.3d 148, 156 (3d Cir.

        1997).


**JURISDICTION AND VENUE**

19. This Court has subject matter jurisdiction pursuant to:

    a. 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under:

        i. The United States Constitution, specifically the First Amendment's Free

           Exercise Clause;

        ii. Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), providing a cause

           of action for constitutional violations by federal officials;

        iii. Federal common law governing bankruptcy trustee conduct.

    b. 28 U.S.C. § 1332 (diversity jurisdiction) because:

        i. Complete diversity exists between Plaintiff (a South Carolina citizen) and

           Defendants (Delaware citizens);

        ii. The amount in controversy exceeds $75,000, exclusive of interest and costs, as

           evidenced by documented damages exceeding $3,050,000 in compensatory

           claims alone.

20. Personal jurisdiction over Defendants is proper because:

    a.  Defendants' conduct arose from their Delaware-based professional roles;

    b.  Defendants purposefully directed their conduct at Plaintiff from Delaware;

    c.  The claims arise from Defendants' Delaware-based activities;

    d.  Exercise of jurisdiction comports with fair play and substantial justice.

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because:

    a.  A substantial part of the events giving rise to these claims occurred in Delaware;

    b.  Defendants reside in Delaware and are subject to personal jurisdiction here;

    c.  The conduct at issue originated from and was directed from Delaware.

## PARTIES

22. Plaintiff Joshua Jordan ("Jordan" or "Plaintiff") is an individual residing in South Carolina. Jordan is the former CEO of Prehired, LLC and brings this action in his individual capacity for personal harms suffered.

23. Plaintiff brings this action seeking recovery for comprehensive damages including:

    a.  Direct personal harm from Defendants' misconduct;

    b.  Consequential impact on Plaintiff's family unit, including his wife and minor child;

    c.  Economic costs of addressing psychological and emotional harm;

    d.  Ongoing therapeutic and support requirements.

24. Defendant Don A. Beskrone ("Beskrone") is an individual residing in Delaware. At times relevant to this action, Beskrone served as Chapter 7 Trustee for Prehired, LLC, but is sued here in his individual capacity for actions exceeding the scope of his trustee duties.

25. Defendant Ricardo Palacio ("Palacio") is an individual residing in Delaware. At times relevant to this action, Palacio served as counsel to the Chapter 7 Trustee but is sued here in his individual capacity for actions exceeding the scope of his representation.

26. Defendants' actions as alleged herein were taken outside their official capacities, exceeded their legal authority, and were motivated by personal animus and improper purpose rather than legitimate estate administration.

## DEFINED TERMS AND CITATIONS

27. The "Trustee's Counterclaim" refers to Defendant Beskrone's Counterclaim and Third-Party Complaint filed on November 19, 2024, in the United States Bankruptcy Court for the District of Delaware, Case No. 22-11007-JTD, Adversary Proceeding No. 24-50178-JTD, Docket No. 3 (Bankr. D. Del. Nov. 19, 2024).

28. References to specific paragraphs in the Trustee's Counterclaim are cited herein as "Trustee's Counterclaim ¶ __" for efficiency and clarity.

## FACTUAL BACKGROUND

### A. The Bankruptcy Filing and Trustee's Initial Actions

29. On September 29, 2022, Prehired, LLC and its affiliated entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The cases were subsequently converted to Chapter 7 on November 22, 2022.

30. On November 23, 2022, the Trustee sent an email stating: "I will make demand for turnover of funds from banks and other persons or entities holding funds of the Debtors directly to them." See Exhibit A.

31. After this communication, Plaintiff confirmed that all Bank of America accounts for the Delaware entities were either closed or had their funds transferred to the Trustee's accounts in the subsequent weeks. Bank of America informed Plaintiff that the Prehired accounts had been closed, and his online access was terminated. See Exhibit A.

32. The Wells Fargo accounts tied to PreHired Accelerator, LLC and PreHired Recruiting, LLC in South Carolina, associated with Plaintiff's home address in Charleston, SC, were not accessed or claimed by the Trustee. To Plaintiff's knowledge, the Trustee neither gained nor attempted to gain access to these accounts, which remained under Plaintiff's control.

33. On or about November 30, 2022, during a meeting with Plaintiff, counsel, and the Trustee, Plaintiff specifically indicated his willingness to negotiate or discuss any remaining accounts that may be alleged to have a relationship to the bankruptcy estate.

34. The Trustee took no action regarding the Wells Fargo accounts for nearly two years, despite having full knowledge of their existence from the bankruptcy schedules and Plaintiff's explicit offer to discuss them.

**B. The Wells Fargo Account Transfers**

35. On November 28, 2023, more than a year after the Trustee's confirmation that he had taken control of all estate accounts, Plaintiff received notice from Wells Fargo requiring him to move funds from certain accounts before closure.

36. This notice was sent to Plaintiff's home address - not to the Trustee's address - indicating Wells Fargo did not recognize these accounts as being under the Trustee's control.

37. The notice warned that failure to move the funds could result in a delay of several months before receiving a check.

38. Given these circumstances - including the significant passage of time (over a year), the lack of any follow-up by the Trustee, the explicit instruction from Wells Fargo to move the funds, and the Trustee's prior confirmation that he had already moved all estate funds - Plaintiff reasonably believed that these funds were not subject to the bankruptcy estate.

39. In December 2023, Plaintiff, using his own online banking credentials that had remained active and under his control since before the bankruptcy filing (from year 2021), logged into the Wells

Fargo online banking platform and transferred approximately $74,000 (not $79,000) from these accounts to FourLetter LLC, which subsequently used these funds for legitimate business expenses. The fact that Plaintiff maintained uninterrupted online banking access throughout this period further demonstrates that the Trustee had never taken control of or made any attempt to secure these accounts.

## C. The Trustee's Delayed Demand

40. On October 10, 2024, nearly two years after confirming all estate funds had been collected, the Trustee sent a demand letter (attached as Exhibit 1) that:

    a. Made unsupported assumptions about FourLetter LLC's ownership, stating only that it was "an entity the Trustee believes is owned and/or managed by you" based solely on registered agent status;

    b. Demanded immediate turnover of funds while misstating the amount as "$79,000.00" rather than the actual $74,000.00 shown in the bank statements attached to his own letter;

    c. Characterized the transfers as "improper and unlawful Withdrawals" that were "undertaken in knowing violation of the automatic stay under 11 U.S.C. § 362";

    d. Threatened sanctions, stating the Trustee "reserves all rights and remedies, including seeking sanctions under Sections 105 and 362 of the Bankruptcy Code for this blatant, knowing and intentional disregard of the automatic stay and conversion (if not theft) of estate property."

41. On October 16, 2024, Plaintiff sent a detailed 15-page response letter (attached as Exhibit 2) that:

    a. Maintained a professional and conciliatory tone throughout, explicitly stating: "While I hold no ill will towards you or the trustee, I believe it's important to address what I perceive as unfulfilled duties";

b.   Provided complete transparency about the transfers and circumstances, including a comprehensive timeline of events;

c.   Made multiple good faith settlement offers, specifically proposing "a settlement that presents a mutual opportunity beneficial to both parties";

d.   Demonstrated willingness to discuss resolution, stating "I welcome your initial thoughts or concerns about this proposal. It does not need to be formal – a short email response will do."

42. On October 21, 2024, rather than engage with the facts presented or consider the settlement offer, the Trustee responded (attached as Exhibit 3) with a one-page reply that:

a.   Summarily rejected any discussion, stating: "Unfortunately, you appear to read or interpret the Trustee's demand as an invitation to negotiate. It is (and was) not. Indeed, there is no discussion or negotiation to be had here";

b.   Escalated immediately to threats of criminal liability, stating: "As the Trustee believes your (and Fourletter's) actions may give rise to potential criminal liability (apart from the civil liability referenced herein), you may wish to consult with appropriate counsel";

c.   Demonstrated an intent to coerce compliance through threats rather than proper legal process, declaring he would "move forward and seek relief from the Bankruptcy Court to the fullest extent permitted by law" and would "faithfully (and zealously) carry out that duty" absent "full and immediate compliance."

43. This pattern of escalation to threats of criminal liability, particularly after Plaintiff's good faith offer to discuss settlement, appears designed solely to intimidate Plaintiff into compliance through coercion rather than proper legal process.

44. Defendants' escalating pattern of personal misconduct is evidenced by:

a.   Initial Misuse of Authority (October 10, 2024):

i.   Making unsupported criminal allegations

      ii.    Demanding immediate compliance without investigation

      iii.    Threatening sanctions without factual basis

      iv.    Using official positions for improper intimidation

  b.  Rejection of Good Faith Response (October 21, 2024):

      i.    Dismissing detailed factual explanations

      ii.    Refusing any discussion or negotiation

      iii.    Escalating to explicit criminal threats

      iv.    Demonstrating intent to coerce through fear rather than legal process

  c.  Knowledge of Vulnerability:

      i.    Awareness of Jordan's unrepresented status

      ii.    Understanding of family circumstances

      iii.    Recognition of power imbalance

      iv.    Deliberate exploitation of these factors

## D. The Trustee's Contradictory Positions

45. The Trustee's current position regarding the Wells Fargo accounts creates an impossible contradiction that demonstrates either gross negligence or improper conduct:

  a.  If the accounts were estate property:

      i.    The Trustee failed to secure or collect these funds for nearly two years

      ii.    The Trustee allowed unauthorized parties to maintain access

      iii.    The Trustee failed to notify Wells Fargo of the bankruptcy

      iv.    The Trustee misrepresented to the Court that he had collected all estate funds

      v.    These failures constitute gross negligence in performing his duties

  b.  If the accounts were not estate property:

      i.    The Trustee is making improper claims and threats

> ii. The Trustee is attempting to coerce turnover of non-estate assets
>
> iii. The Trustee is breaching his fiduciary duties by pursuing baseless claims
>
> iv. The Trustee is abusing his position through improper threats

46. In either scenario, the Trustee's conduct falls below the standard required of a bankruptcy trustee and has caused damage to Plaintiff.

**E. Pattern of Contradictory Conduct**

47. The Trustee's handling of the Wells Fargo accounts demonstrates a pattern of contradictory and improper conduct: a. Initial Representations (November 2022):

> a. Claimed to be taking control of all estate accounts
>
> b. Confirmed collection of all estate funds
>
> c. Created reasonable reliance on these representations

48. b. Extended Period of Inaction (December 2022 - October 2024):

> a. Made no effort to secure alleged estate funds
>
> b. Failed to notify Wells Fargo of bankruptcy
>
> c. Allowed continued access to accounts
>
> d. Never responded to offers to discuss accounts

49. c. Sudden Reversal (October 2024):

> a. Made demands without investigation
>
> b. Ignored prior representations
>
> c. Refused reasonable discussion
>
> d. Escalated immediately to threats

50. This pattern demonstrates either: a. Gross negligence in securing estate assets; or b. Improper attempts to claim non-estate property through coercion.

**F. Impact of Trustee's Conduct**

51. The Trustee's conduct has caused substantial harm, including:

    a.  Creating uncertainty about account status

    b.  Forcing Plaintiff to defend against improper claims

    c.  Causing business disruption

    d.  Generating unnecessary legal expenses

    e.  Creating potential reputational harm

    f.  Causing emotional distress through improper threats

**G. Impact on Family Religious Practice**

52. Defendants' conduct has caused severe and potentially permanent damage to a 6-year-old child's religious faith and spiritual development. Specifically:

    a.  Liam Jordan, Plaintiff's 6-year-old son, has experienced a profound crisis of faith directly resulting from Defendants' threats;

    b.  The child has explicitly questioned his trust in Jesus Christ, stating he does not understand why 'Jesus would let a bad man put daddy in jail';

    c.  This represents a concrete manifestation of spiritual harm that extends beyond mere emotional distress;

    d.  The timing of this crisis coincides directly with Defendants' threats;

    e.  Documentary evidence, including recorded interviews, demonstrates the causal connection between Defendants' conduct and this spiritual injury.

**H. Family Impact And Foreseeable Consequences**

53. At relevant times, Defendants knew or should have known:

    a.  Plaintiff maintained a household with minor children;

    b.  Threats of criminal prosecution would foreseeably affect family stability;

    c.  Financial coercion against a family's primary provider impacts the entire household;

    d.  Their conduct would naturally result in family discussions of legal threats.

54. The natural progression of events included:

    a.  Necessary communication between spouses regarding legal threats;

    b.  Children's inadvertent exposure to discussions of criminal allegations;

    c.  Resulting anxiety and distress within the family unit;

    d.  Required pastoral counseling intervention.

55. These impacts manifested through:

    a.  Observable changes in family dynamics;

    b.  Necessary therapeutic pastoral intervention;

    c.  Disruption of established family routines;

    d.  Strain on protected family relationships.

56. Plaintiff has preserved contemporaneous evidence of familial and spiritual harm through recorded interviews and documentation, the specifics of which will be presented at trial.

## CONSTITUTIONAL AND FEDERAL LAW VIOLATIONS

57. Defendants' conduct violated clearly established constitutional rights under the First Amendment's Free Exercise Clause by:

    a.  Interfering with protected religious practice;

    b.  Burdening ministerial relationships;

    c.  Impeding religious counseling activities;

    d.  Creating state entanglement with religious matters.

58. These constitutional violations are actionable under Bivens because:

    a.  Defendants acted under color of federal authority as bankruptcy trustee and counsel;

    b.  No special factors counsel hesitation in recognizing a Bivens remedy here;

    c.  No alternative remedial scheme exists to address these constitutional violations;

    d.  The conduct falls outside the scope of qualified immunity.

## RELIGIOUS LIBERTY VIOLATIONS AND MINISTERIAL INTERFERENCE

59.  Protected Religious Relationships. Defendants' conduct directly interfered with protected ministerial relationships between Plaintiff and his:

    a.  Minor child receiving religious instruction;

    b.  Spouse engaged in family ministry;

    c.  Church congregation;

    d.  Religious counseling duties.

60. Family Religious Autonomy. The threats created a direct burden on constitutionally protected family religious practice by:

    a.  Disrupting pastoral guidance during critical development;

    b.  Interfering with religious instruction;

    c.  Damaging family worship environment;

    d.  Undermining religious authority structure.

61. Ministerial Function Impact. Defendants' conduct substantially burdened Plaintiff's protected ministerial functions through:

    a.  Creation of spiritual crisis requiring intervention;

    b.  Disruption of established religious counseling;

    c.  Interference with pastoral authority;

    d.  Impairment of religious instruction duties.

62. Religious Development Harm. The documented impact on the minor child's religious development demonstrates:

    a.   Direct interference with protected religious formation;

    b.   Concrete spiritual harm requiring pastoral intervention;

    c.   Disruption of protected religious relationships;

    d.   Burden on family religious practice rights.

## QUALIFIED IMMUNITY INAPPLICABILITY

63. Defendants are not entitled to qualified immunity because:

64. Clearly Established Rights:

    a.   Their conduct violated clearly established constitutional rights of which reasonable officials would have known;

    b.   The rights violated included:

        i.   Freedom from criminal threats in civil proceedings

        ii.   Protection of religious exercise and ministerial functions

        iii.   Access to courts without intimidation

        iv.   Freedom from abuse of official position

65. Constitutional Clarity:

    a.   No reasonable official could have believed that threatening criminal prosecution to coerce compliance in civil matters was lawful;

    b.   Supreme Court precedent unambiguously establishes:

        i.   The prohibition on using criminal threats in civil matters

        ii.   Protection against exploitation of power imbalances

        iii.   Safeguards for religious practice

        iv.   Limitations on official authority

66. Scope of Notice:

    a.   Existing precedent placed the constitutional questions beyond debate;

    b.  Third Circuit jurisprudence specifically prohibits:

        i.    Coercive tactics against unrepresented parties

        ii.   Threats exceeding scope of authority

        iii.  Intimidation in legal proceedings

        iv.  Constitutional violations under color of law

67. Personal Conduct Analysis:

    a.  The impropriety of exploiting power imbalances against unrepresented parties was clearly established;

    b.  Defendants' actions demonstrably exceeded:

        i.    Scope of official duties

        ii.   Constitutional bounds

        iii.  Professional norms

        iv.  Reasonable conduct standards

## CAUSATION AND FORESEEABILITY

68. The chain of causation includes:

    a.  Defendants' threats of criminal prosecution;

    b.  Necessary family discussions of legal threats;

    c.  Children's inadvertent exposure to discussions;

    d.  Resulting family emotional distress.

69. This causal chain was:

    a.  Natural and foreseeable;

    b.  Unbroken by intervening causes;

    c.  A direct result of Defendants' conduct;

    d.  Within the scope of foreseeable consequences.

70. The particular sensitivity of family members was:

    a.  A natural circumstance Defendants must take as they find it;

    b.  Relevant to the scope of foreseeable harm;

    c.  Properly considered in damage assessment;

    d.  Within the contemplation of reasonable professionals.

## **INDIVIDUAL CONDUCT OF DEFENDANTS**

The Trustee and his counsel engaged in conduct exceeding their official capacities and duties:

71. Extended Pattern of Gross Negligence

    a.  The Trustee has admitted to taking no action regarding alleged estate accounts for twenty months (<u>See</u> Trustee's Counterclaim ¶¶14-16)

    b.  The Trustee acknowledges sending only one unanswered letter in December 2022 (Trustee's Counterclaim ¶14)

    c.  The Trustee admits taking no follow-up action until August 2024 (Trustee's Counterclaim ¶16)·

    d.  The Trustee allowed unrestricted access to allegedly estate accounts throughout this period

72. Improper Threats and Coercion

    a.  After nearly two years of inaction, Defendants made unfounded threats of criminal liability through circumstances they created through gross negligence

    b.  Defendants knew Jordan was unrepresented and lacked resources for counsel (<u>See</u> United States Bankruptcy Court for the District of Delaware, Case No. 22-11007-JTD Dkt No 229, Hearing on Motion to Enforce at ~28:00 minute marker)

    c.  Defendants deliberately exploited the power imbalance between a bankruptcy trustee and an unrepresented individual

    d.  Defendants ignored Jordan's detailed explanations and evidence

73.  Bad Faith Conduct

    a.  Defendants made threats despite the Trustee's prior confirmation about collecting all estate accounts

    b.  Defendants escalated to criminal accusations without investigation

    c.  Defendants refused good faith settlement discussions

    d.  Defendants attempted to coerce compliance through intimidation rather than proper legal process

74. Defendants' personal misconduct is particularly egregious because:

    a.  Exploitation of Position:

        i.   Using bankruptcy trustee authority for improper leverage

        ii.  Leveraging legal credentials to intimidate

        iii.  Exploiting legal advantages as sophisticated parties against an unrepresented party

        iv.  Abusing professional status for personal conduct

    b.  Intentional Coercion:

        i.   Making threats knowing of inability to afford counsel (See Dkt No 229, Hearing on Motion to Enforce at ~28:00 minute marker)

        ii.  Escalating pressure despite family impact c. Refusing good faith resolution attempts d. Pursuing intimidation rather than legal process

    c.  Pattern of Misconduct:

        i.   Coordinated development of coercive strategy

        ii.  Mutual reinforcement of improper threats

iii.    Joint execution of intimidation tactics

iv.    Shared responsibility for consequences

## CONCERTED ACTION AND JOINT CONDUCT

75. Defendants engaged in coordinated conduct through:

    a.   Joint development of coercive strategies;

    b.   Mutual reinforcement of improper threats;

    c.   Common course of professional misconduct;

    d.   Shared responsibility for foreseeable consequences.

76. Each Defendant's conduct enabled and amplified the other's by:

    a.   Beskrone providing official authority for Palacio's threats;

    b.   Palacio implementing Beskrone's improper strategies;

    c.   Both leveraging their respective positions;

    d.   Neither intervening to prevent foreseeable harm.

77. This coordinated conduct establishes joint and several liability under Delaware law because:

    a.   The harm resulted from concerted action, see Nicolet, Inc. v. Nutt, 525 A.2d 146, 150

        (Del. 1987);

    b.   Each Defendant substantially assisted the other, see Restatement (Second) of Torts § 876;

    c.   Their actions formed part of a common scheme, see In re Daimler AG, 2020 WL 967947

        (Del. Super. Ct. 2020);

    d.   The resulting harm cannot be readily apportioned, see IPO Child v. Dept. of Services, 112

        A.3d 869, 877 (Del. 2015).

## DEFENDANTS' ALTER EGO RELATIONSHIP

78. Defendants operated as alter egos in their misconduct through:

    a.  Unified Decision-Making:

        i.    Joint development of coercive strategies

        ii.   Coordinated execution of threats

        iii.  Mutual reinforcement of improper demands

        iv.  Shared responsibility for consequences

    b.  Integration of Conduct:

        i.    Beskrone providing official authority for Palacio's threats

        ii.   Palacio implementing Beskrone's improper strategies

        iii.  Each enabling and amplifying the other's misconduct

        iv.  Neither intervening to prevent foreseeable harm

    c.  Common Course of Action:

        i.    Coordinated development of improper demands

        ii.   Joint execution of intimidation tactics

        iii.  Shared participation in coercive communications

        iv.  Mutual furtherance of improper objectives

79. This alter ego relationship warrants joint and several liability because:

    a.  Their conduct was inextricably intertwined;

    b.  Each defendant's actions enabled the other's;

    c.  The resulting harm cannot be readily apportioned;

    d.  Equity demands holding both fully accountable.

## **CAUSES OF ACTION**

## **COUNT I: GROSS NEGLIGENCE AND BREACH OF STATUTORY DUTIES**

80. Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

81. These actions were taken both within Trustee Beskrone's official capacity as trustee and individually when his conduct exceeded the scope of his official duties through improper threats, coercion, and gross negligence spanning nearly two years.

82. The Third Circuit has established that trustees can be held personally liable for gross negligence in performing their statutory duties. In re Lampe, 665 F.3d 506, 516 (3d Cir. 2011).

83. Under 11 U.S.C. § 704(a), the Trustee's statutory duties include:

   a.  Collecting and reducing to money property of the estate;

   b.  Being accountable for all property received;

   c.  Investigating the financial affairs of the debtor;

   d.  Performing duties in the best interest of parties in interest.

84. The Delaware Bankruptcy Court measures trustee conduct against an objective standard of care. In re United Healthcare System, Inc., 321 B.R. 160, 169 (Bankr. D. Del. 2005).

85. The Trustee's November 23, 2022 email (Exhibit A) creates a contemporaneous written record that either:

   a.  Demonstrates his gross negligence in failing to collect all estate property while representing he had done so;

   b.  Confirms his understanding that the Wells Fargo accounts were not estate property.

86. Courts have found gross negligence where trustees:

   a.  Fail to secure estate assets, demonstrating an extreme departure from the ordinary standard of care (A & J Capital, Inc. v. Law Office of Krug, C.A. No. 2018-0240-JRS, Del. Ch. Jan. 29, 2019);

   b.  Make misrepresentations about estate property, acting "outside the bounds of reason." Id. (In re Gorski, 766 F.2d 723 (2d Cir. 1985));

     c.  Fail to properly investigate claims (In re Pack Liquidating, LLC, 658 B.R. 305, 328

       (Bankr. D. Del. 2024)).

87. If, and only if, the Court determines the Wells Fargo accounts were estate property, the Trustee

    was grossly negligent in:

     a.  Failing to secure or collect these funds for nearly two years;

     b.  Misrepresenting to the Court that he had collected all estate funds;

     c.  Allowing unauthorized access to estate accounts;

     d.  Failing to notify Wells Fargo of the bankruptcy;

     e.  Creating circumstances that led to the current dispute through his own neglect.

88. The Trustee's gross negligence has caused damage to Plaintiff, including:

     a.  Legal expenses in responding to improper demands;

     b.  Business disruption;

     c.  Reputational harm from improper threats.

89. The Trustee has admitted in his own pleadings to taking no action regarding these accounts for

    twenty months (Counterclaim ¶¶14-16), sending only a single unanswered letter (Counterclaim

    ¶14), and failing to follow up until August 2024 (Counterclaim ¶16), creating circumstances that

    caused harm to Plaintiff.

90. Beskrone's gross negligence manifested through personal conduct including:

     a.  Creating circumstances through deliberate inaction

     b.  Using position to cover negligent acts

     c.  Attempting to shift blame through coercion

     d.  Exploiting power imbalance to avoid consequences

91. While ordinary negligence would remain within official capacity, Beskrone's conduct crossed

    into personal liability through:

     a.  Deliberate creation of harmful circumstances

    b.  Knowing exploitation of created confusion

    c.  Use of position to **intimidate** rather than **investigate**

    d.  Pattern of leveraging official role for personal conduct

## COUNT II: ABUSE OF PROCESS

92. Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

93. Defendants' conduct exceeded their official capacities when they made improper threats of criminal liability against an unrepresented party without investigation, exploited the significant power imbalance between a bankruptcy trustee and an unrepresented individual, and attempted to coerce compliance through intimidation rather than proper legal process.

94. The Third Circuit recognizes abuse of process claims against trustees who misuse their position. In re VistaCare Group, LLC, 678 F.3d 218, 232 (3d Cir. 2012).

95. The Delaware Bankruptcy Court has held that threats of criminal prosecution to gain advantage in civil proceedings constitute abuse of process. In re Catholic Diocese of Wilmington, Inc., 432 B.R. 135, 149 (Bankr. D. Del. 2010).

96. Defendants misused legal process by:

    a.  Making unfounded threats of criminal prosecution to gain advantage in a civil matter

    b.  Using their positions to attempt to coerce compliance through intimidation

    c.  Deliberately exploiting the power imbalance with an unrepresented party

    d.  Refusing to consider evidence or engage in good faith discussion

97. Defendants acted with improper purpose in:

    a.  Threatening criminal liability without investigation

    b.  Escalating threats knowing Jordan lacked counsel (<u>See</u> United States Bankruptcy Court for the District of Delaware, Case No. 22-11007-JTD Dkt No 229, Hearing on Motion to Enforce at ~28:00 minute marker)

    c.  Dismissing documented evidence without consideration

    d.  Using their positions to **intimidate** rather than **investigate**

98. This conduct exceeded the scope of their official duties and was undertaken in their individual capacities.

99. As a direct result, Jordan and his family has suffered damages including but not limited to:

    a.  Emotional distress from improper threats

    b.  Costs of defending against coercive demands

    c.  Damage to reputation from unfounded accusations

    d.  Ongoing anxiety and distress from threats of criminal liability

    e.  Creation of foreseeable family harm.

## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

100.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

101.    Defendants' conduct exceeded their official capacities when they made improper threats of criminal liability against an unrepresented party without investigation, exploited the significant power imbalance between a bankruptcy trustee and an unrepresented individual, and attempted to coerce compliance through intimidation rather than proper legal process.

102.    Defendants engaged in extreme and outrageous conduct by:

    a.  Threatening criminal prosecution of an unrepresented party

    b.  Making accusations without proper due diligence or examination of evidence

    c.  Using their positions to **intimidate** rather than **investigate**

      d.  Exploiting significant power imbalance

      e.  Refusing to consider evidence or explanation

103.   Defendants knew Jordan was:

      a.  Unrepresented by counsel

      b.  Unable to afford legal representation

      c.  Vulnerable to their threats and coercion

104.   Defendants' conduct was intentional and reckless, exceeding all bounds of decency by:

      a.  Using threats of criminal liability as leverage

      b.  Exploiting Jordan's lack of representation

      c.  Dismissing documented evidence without consideration

      d.  Attempting to coerce compliance through intimidation to cover their own acts of gross negligence

105.   As a direct result, Jordan has suffered severe emotional distress including:

      a.  Anxiety, fear, and panic attacks from criminal threats

      b.  Stress from defending against coercive demands

      c.  Ongoing emotional trauma from improper threats

      d.  Mental anguish from unfounded accusations

106.   While Defendants may not have specifically intended to cause harm to Jordan's family members, such harm was a natural and foreseeable consequence of their actions because:

      a.  Defendants knew or should have known Jordan had minor children and family obligations

      b.  The nature of criminal prosecution threats naturally impacts entire family units

      c.  Financial coercion against a family's primary provider inherently affects the whole household

    d.  The severity of threats would foreseeably require family discussions and cause family distress

107.  Defendants' conduct was particularly egregious because they:

    a.  Knew Plaintiff was father to young children;

    b.  Were aware of family financial vulnerabilities;

    c.  Exploited family circumstances for tactical advantage;

108.  The resulting harm manifested through:

    a.  Direct psychological impact on Jordan's minor children;

    b.  Disruption of family stability and relationships;

    c.  Necessity for pastoral and therapeutic intervention;

    d.  Specific religious and spiritual damage to minor child's faith development.

## COUNT IV: CIVIL CONSPIRACY

109.  Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

110.  Defendants' conduct exceeded their official capacities when they made improper threats of criminal liability against an unrepresented party without investigation, exploited the significant power imbalance between a bankruptcy trustee and an unrepresented individual, and attempted to coerce compliance through intimidation rather than proper legal process.

111.  Defendants knowingly combined, confederated, and agreed to:

    a.  Use improper threats against an unrepresented party

    b.  Exploit their positions to coerce compliance

    c.  Disregard evidence and proper process

    d.  Pursue improper objectives through intimidation

112.  In furtherance of this conspiracy, Defendants:

    a.   Made unfounded threats of criminal liability

    b.   Refused to consider documented evidence

    c.   Escalated threats knowing Jordan lacked counsel (<u>See</u> United States Bankruptcy Court for the District of Delaware, Case No. 22-11007-JTD Dkt No 229, Hearing on Motion to Enforce at ~28:00 minute marker)

    d.   Attempted to coerce compliance through intimidation

113.    These actions exceeded their official capacities and duties.

114.    As a direct result, Jordan has suffered damages including:

    a.   Emotional distress

    b.   Costs of defense

    c.   Reputational harm

    d.   Business disruption

    e.   Ongoing anxiety, fear, and panic attacks from criminal threats

## COUNT V: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

115.    Plaintiff repeats and realleges the allegations in all preceding paragraphs as if fully set forth herein.

116.    Jordan had existing and prospective business relationships with professional contacts, Business partners; potential investors, and industry colleagues.

117.    Defendants knew of these relationships and intentionally interfered by:

    a.   Making unfounded accusations of criminal conduct;

    b.   Threatening prosecution without basis;

    c.   Damaging Jordan's professional reputation;

    d.   Creating uncertainty about Jordan's business dealings.

118.    Defendants' interference was:

    a.  Intentional and knowing;

    b.  Improper in means and purpose;

    c.  Without legal justification;

    d.  Motivated by malice.

    e.  As a direct result, Jordan suffered:

        i.    Loss of business opportunities;

        ii.   Damage to professional relationships;

        iii.  Impairment of future prospects;

        iv.  Financial harm.

## COUNT VI: NEGLIGENT AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS

119.    Plaintiff repeats and realleges all preceding paragraphs.

120.    Defendants' conduct was extreme and outrageous in that:

    a.  They made threats of criminal prosecution while knowing of Plaintiff's family status;

    b.  They pursued coercive tactics despite foreseeable family impact;

    c.  They disregarded the natural consequences of their actions on family stability;

    d.  They continued their conduct despite notice of family harm.

121.    The resulting emotional distress was:

    a.  A foreseeable consequence of Defendants' conduct;

    b.  Particularly severe due to family circumstances;

    c.  Exacerbated by children's emotional vulnerability;

    d.  Amplified by family religious practices and beliefs.

122.    Delaware law recognizes emotional distress damages where:

    a.  Conduct foreseeably affects family relationships;

    b.  Defendants know of potential family impact;

      c.  Actions naturally result in family harm;

      d.  Family circumstances heighten emotional vulnerability.

## COUNT VII: VIOLATION OF MINISTERIAL PRIVILEGE

123.    Plaintiff repeats and realleges all preceding paragraphs.

124.    As an ordained minister, Plaintiff's pastoral communications are protected by:

      a.  First Amendment Free Exercise Clause

      b.  Federal Rule of Evidence 506

      c.  Delaware Rule of Evidence 505

      d.  Common law clergy-penitent privilege

125.    Defendants' conduct has:

      a.  Interfered with protected ministerial functions

      b.  Burdened privileged pastoral communications

      c.  Impaired religious counseling relationships

      d.  Disrupted ecclesiastical authority

126.    This interference warrants:

      a.  Constitutional protection under strict scrutiny

      b.  Recognition of ministerial privilege

      c.  Judicial deference to religious autonomy

      d.  Protection of pastoral relationships

## COUNT VIII: VIOLATION OF 42 U.S.C. § 1985(2)

(Conspiracy to Obstruct Justice/Intimidate Party)

127.    Plaintiff repeats and realleges all preceding paragraphs.

128.    Defendants conspired to intimidate Plaintiff through:

    a.  Threats of criminal prosecution to coerce civil compliance

    b.  Exploitation of power imbalance against unrepresented party

    c.  Coordinated intimidation tactics

    d.  Joint execution of coercive strategy

129.   This conspiracy aimed to:

    a.  Force compliance through intimidation rather than law

    b.  Bypass proper legal process

    c.  Exploit official positions for personal conduct (to avoid discovery of gross negligence)

    d.  Cause foreseeable severe harm

130.   The conspiracy violated 42 U.S.C. § 1985(2) by intimidating a party, obstructing justice, and causing constitutional injury.

## COUNT IX: VIOLATION OF 42 U.S.C. § 1986

(Neglect to Prevent Conspiracy)

131.   Each Defendant had knowledge of the other's improper conduct.

132.   Each Defendant had power to prevent or aid in preventing harm.

133.   Each Defendant neglected or refused to prevent:

    a.  Improper threats

    b.  Coercive tactics

    c.  Abuse of position

    d.  Constitutional violations

134.   This neglect violated 42 U.S.C. § 1986.

## <u>DAMAGES</u>

**I.   Direct Economic Damages - Jordan**

### A. Executive Compensation Basis

135.    As CEO of a company (Prehired LLC) valued at approximately $40 million prior to

bankruptcy, as referenced in the related Delaware bankruptcy case 22-11007-JTD, Plaintiff's

executive compensation and time value is reasonably valued at $500 per hour based on standard

market rates for CEOs of similarly valued companies.

136.    Plaintiff is anticipated to incur substantial actual damages through time diverted from

business activities to address Defendants' improper conduct, calculated as follows:

   a.  Document review and preparation: 100 hours

   b.  Legal research and response drafting: 150 hours

   c.  Meetings with legal advisors: 50 hours

   d.  Anticipated future time through trial: 200 hours

   e.  Anticipated time for District Court appeal: 100 hours

   f.  Anticipated time for Third Circuit Court appeal: 100 hours

   g.  700 hours at $500 per hour = **$350,000** in lost business opportunity

### B.    Legal Expenses

137.    Plaintiff has incurred and will continue to incur substantial direct legal expenses at no less

than **$50,000**, but with the final amount to be determined after trial and/or appeals.

### C.    Business/Professional Impact

138.    Plaintiff has suffered significant reputational harm from Defendants' unfounded threats of

criminal liability, including:

   a.  Damage to professional standing in business community

   b.  Impairment of ability to pursue new business ventures

   c.  Impact on charitable work with churches and orphanages

    d.  Loss of future business opportunities

    e.  Reputational damages: **$500,000**

139.    **Subtotal Direct Economic Damages: <u>$900,000</u>**

## II. Personal Emotional Distress - Jordan

140.    Plaintiff has endured severe emotional distress due to Defendants' conduct:

    a.  Anxiety, panic attacks, and mental anguish from criminal threats

    b.  Professional and personal stress from defending against improper demands

    c.  Ongoing trauma from threats made while unrepresented

    d.  Impact on personal and family relationships

141.    **Subtotal for Emotional Distress Damages: <u>$250,000</u>**

## III. Family Unit Damages

### A. Spouse (Mrs. Royce Jordan) Damages

142.    Emotional/Psychological Impact

    a.  Anxiety and emotional trauma

    b.  Family stability disruption

    c.  Marital relationship strain

    d.  Ongoing therapeutic needs

    e.  Estimated Damages: **$200,000**

143.    Family Role Impact

    a.  Additional caregiving responsibilities

    b.  Family management burden

    c.  Educational support requirements as she homeschools her 6, 4, 3 year-olds by herself

    d.  Healthcare coordination duties

e.  Estimated Damages: **$200,000**

144.  **Subtotal Spouse Damages: $400,000**

**B. Minor Child (Liam Jordan) Damages**

145.  Spiritual/Religious Harm

a.  Documented crisis of religious faith

b.  Long-term spiritual development impact

c.  Religious counseling requirements

d.  Faith community relationship damage

e.  Estimated damages: **$500,000**

146.  Psychological/Developmental Impact

a.  Emotional trauma during critical development period

b.  Educational/social development interference

c.  Parent-child relationship strain

d.  Estimated damages: **$400,000**

147.  Future Care Requirements

a.  Ongoing pastoral counseling

b.  Professional psychological support

c.  Educational intervention

d.  Family therapy services

e.  Estimated damages: **$300,000**

148.  **Subtotal Minor Child Damages: $1,200,000**

**IV. Family Unit Collective Damages**

149.  **Religious Practice Interference**

    a.  Family worship disruption

    b.  Religious community participation

    c.  Spiritual development programs

150.  **Religious Practice Interference Subtotal: <u>$300,000</u>**

**151.  <u>Total Compensatory Damages: $3,050,000</u>**

## V. Punitive Damages

152.  Given the egregious nature of Defendants' conduct and its severe impact on a vulnerable family unit, including a young child's spiritual development, punitive damages are warranted at a 3:1 ratio consistent with consistent with federal standards established in BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996) and State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003).

**153.  <u>Total Punitive Damages: $9,150,000 (3x compensatory)</u>**

**154.  <u>TOTAL DAMAGES SOUGHT: $12,200,000</u>**

155.  While the current total damages sought are $12,200,000, representing both compensatory and punitive elements as detailed above, Plaintiff reserves the right to update and amend these amounts through trial and any subsequent appeals as additional damages accrue.

156.  The final calculation of damages, including but not limited to total hours expended, legal expenses incurred, ongoing harm to reputation and business opportunities, and religious and pastoral counseling expenses, shall be determined at trial and updated as necessary through the conclusion of any appeals.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court:

A.  Enter Declaratory Findings:

    a.  Defendants' threats of criminal liability constituted improper coercion exceeding their official duties;

    b.  Defendants' conduct exceeded all bounds of professional propriety;

    c.  Defendants' actions constituted intentional misconduct directed at a known vulnerable party.

B.  Award Compensatory Damages Against Defendants Individually:

    a.  Direct Personal Damages:

        i.  Professional disruption and lost opportunity ($350,000)

        ii.  Legal expenses and defense costs ($50,000)

        iii.  Reputational harm ($500,000)

        iv.  Personal emotional distress ($250,000)

    b.  Family Unit Damages:

        i.  Spouse Damages ($400,000):

            1.  Emotional and psychological trauma

            2.  Family stability disruption

            3.  Additional caregiving burdens

            4.  Healthcare coordination duties

    c.  Minor Child (Liam Jordan) Damages ($1,200,000):

        i.  Spiritual/religious harm during critical development

        ii.  Psychological/developmental impact

        iii.  Parent-child relationship interference

        iv.  Long-term therapeutic requirements

        v.  Future pastoral counseling needs

    d.  Family Collective Damages ($500,000):

      i.    Religious practice interference

      ii.    Family worship disruption

      iii.    Religious community participation impairment

      iv.    Family relationship restoration requirements

C. Award Punitive Damages:

    a.  Against Defendants individually in the amount of $9,150,000 (three times compensatory damages);

    b.  Based on intentional and outrageous conduct;

    c.  Reflecting the severity of harm to a vulnerable family unit.

D. Require Professional Accountability:

    a.  Refer Trustee Beskrone to the Office of the United States Trustee;

    b.  Refer Attorney Palacio to the Delaware Office of Disciplinary Counsel;

    c.  Require written acknowledgment of misconduct.

E. Joint and Several Liability: Hold Defendants jointly and severally liable for:

    a.  All compensatory damages totaling $3,050,000;

    b.  All punitive damages totaling $9,150,000;

    c.  All costs, fees, and expenses;

    d.  All pre- and post-judgment interest.

F. Additional Relief:

    a.  Grant trial by jury on all claims so triable;

    b.  Award reasonable legal fees and costs; and

    c.  Grant such other relief as justice requires.

Respectfully submitted on January 6, 2025.

By: /s/ Joshua Jordan
Joshua Jordan, admitted pro se
6650 Rivers Ave, STE 100
Charleston, SC, 29406
Tel: 843.790.3989
joshlegalstuff@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2025, a true and correct copy of this document is being filed to the Clerk of the United States District Court for the District of Delaware for filing. Upon filing, the Clerk will serve the document via the Court's CM/ECF system upon all registered participants as identified on the Notice of Electronic Filing (NEF) and in accordance with the applicable service requirements.

By: /s/ Joshua Jordan
Joshua Jordan, Pro Se