Joshua Jordan, admitted Pro Se
6650 Rivers Ave, STE 100
Charleston, SC, 29406
Tel: 843.790.3989
joshlegalstuff@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOSHUA JORDAN, <br> Plaintiff, <br><br> v. <br><br> DON BESKRONE, <br> RICARDO PALACIO, and <br> ASHBY & GEDDES, P.A. <br> Defendants. | Case No.: 1:25-cv-00023-MN <br><br> **PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff Joshua Jordan ("Plaintiff"), proceeding pro se, hereby respectfully moves this Honorable Court for leave to file a Second Amended Complaint in this action and opposes Defendants' Motion to Dismiss dated March 4, 2025. This motion serves the dual purpose of seeking leave to amend and responding to the deficiencies alleged in Defendants' Motion to Dismiss.

The proposed Second Amended Complaint directly addresses and remedies the specific deficiencies identified in Defendants' Motion to Dismiss. Rather than requiring the Court to rule on dismissal of a complaint that Plaintiff acknowledges contains

technical pleading imperfections, judicial economy favors permitting amendment to allow consideration of Plaintiff's substantive claims as properly pleaded. The Third Circuit has stated that, "We have held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment." See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

In support of this Motion, Plaintiff states as follows:

**INTRODUCTION**

The Federal Rules of Civil Procedure embody a liberal policy toward amendment of pleadings. Fed. R. Civ. P. 15(a)(2) expressly provides that courts "should freely give leave [to amend] when justice so requires." As the Supreme Court has instructed, "this mandate is to be heeded." Foman v. Davis, 371 U.S. 178, 182 (1962).

The proposed Second Amended Complaint (attached as Exhibit A) addresses specific legal vulnerabilities identified in Defendants' Motion to Dismiss, provides greater precision in the articulation of claims, clarifies the jurisdictional basis for Plaintiff's claims, and strengthens the factual allegations supporting each cause of action. These refinements promote judicial economy, sharpen the legal issues for adjudication, and ensure that Plaintiff's substantive claims receive appropriate consideration despite technical pleading imperfections.

**BACKGROUND**

1. Plaintiff filed his original Complaint on January 10, 2025.

2. Plaintiff filed his First Amended Complaint on February 21, 2025, pursuant to Fed. R. Civ. P. 15(a)(1)(B).

3. On March 4, 2025, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

4. Upon reviewing Defendants' Motion to Dismiss, Plaintiff has identified specific legal refinements that would address certain challenges raised by Defendants while ensuring the Court has the opportunity to consider Plaintiff's claims on their substantive merits.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." This liberal amendment standard reflects the "strong public policy favoring the resolution of disputes on the merits." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990).

The Third Circuit has repeatedly emphasized that district courts should grant leave to amend absent a substantial reason for denial, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman, 371 U.S. at 182; see

also Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (instructing that "a liberal amendment philosophy limits the district court's discretion to deny leave to amend").

This liberal amendment policy has particular force where, as here, a pro se litigant seeks leave to amend in response to arguments raised in a motion to dismiss. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("[W]hen a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile."); Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.").

## ARGUMENT

## I. JUSTICE REQUIRES GRANTING LEAVE TO AMEND

The proposed Second Amended Complaint enhances the clarity, precision, and legal foundation of Plaintiff's claims in several material respects, thereby promoting the interests of justice:

### A. Enhanced Jurisdictional Analysis

The Second Amended Complaint addresses Defendants' Barton doctrine arguments with a thorough, well-supported jurisdictional analysis that includes:

1. Detailed explanation of the "conceivable effect" test established in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), and why this Court has subject matter jurisdiction over Plaintiff's claims;

2. Clarification that the Barton doctrine cannot require leave from a court that lacks subject matter jurisdiction over the claims presented, as recognized in In re Summit Metals, Inc., 477 B.R. 484, 499 (Bankr. D. Del. 2012);

3. Explicit articulation of the ultra vires exception to the Barton doctrine as stated in Barton v. Barbour itself: "But if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right; for in such case the receiver would be acting ultra vires." 104 U.S. 126, 134 (1881);

4. Thorough explanation of how Stern v. Marshall, 564 U.S. 462, 484 (2011), limits bankruptcy court jurisdiction, noting that "Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."

This enhanced jurisdictional analysis directly addresses Defendants' primary basis for dismissal and establishes this Court's authority to adjudicate Plaintiff's claims.

**B. Stronger Factual Foundation for Ultra Vires Allegations**

The Second Amended Complaint provides greater factual specificity regarding Defendants' ultra vires conduct, including:

1. Concrete evidence of religious harm captured in contemporaneous video recordings showing Plaintiff's six-year-old son questioning his faith in Jesus Christ as a direct result of Defendants' threats;
2. Detailed documentation of physical manifestations of distress in Plaintiff, his wife, and his minor child, including hyperventilation, trembling, insomnia, and physical symptoms;
3. Direct temporal connection between Defendants' October 21, 2024 escalation to criminal threats and the onset of severe trauma symptoms;
4. Video evidence dated December 11-12, 2024, and January 9, 2025, explicitly showing the child connecting his fear to the "bad man" threats against his father.

These factual enhancements establish a clear causal connection between Defendants' conduct and the documented harm, strengthening the ultra vires nature of their actions.

**C. Refined Constitutional Claims**

The Second Amended Complaint significantly strengthens the constitutional dimension of Plaintiff's claims by:

1. Articulating a robust Free Exercise Clause claim supported by Supreme Court precedent in Wisconsin v. Yoder, 406 U.S. 205, 213-14 (1972), and Trinity Lutheran Church of Columbia, Inc. v. Comer, 137 S. Ct. 2012, 2022 (2017);

2. Explaining how Defendants' conduct placed substantial pressure on protected religious practice, creating precisely the kind of unconstitutional burden recognized in Thomas v. Review Bd. of Indiana Employment Security Div., 450 U.S. 707, 718 (1981);

3. Documenting direct interference with Plaintiff's constitutionally protected role in providing religious instruction to his minor children;

4. Establishing that Defendants' threats serve no compelling governmental interest and fail strict scrutiny review.

These constitutional refinements transform what Defendants characterize as ordinary tort claims into substantive federal questions that properly invoke this Court's jurisdiction under 28 U.S.C. § 1331.

## D. Detailed Documentation of Procedural Misconduct

The Second Amended Complaint now includes evidence of Defendants' procedural misconduct in the parallel bankruptcy proceeding:

1. Filing a Third-Party Complaint against FourLetter LLC after it had ceased all business operations;

2. Misrepresenting to the Bankruptcy Court that proper service had been effectuated despite explicit notice from Plaintiff that he lacked authority to accept service;

3. Strategic timing of their default request—filed late in the day and processed after courthouse closing hours—to prevent Plaintiff from responding;

4. Pattern of fraudulent conduct that mirrors their behavior in this action.

This additional evidence reinforces the pattern of misconduct alleged throughout the Complaint and addresses Defendants' arguments regarding abuse of process claims.

**E. Enhanced Judicial Estoppel Arguments**

The Second Amended Complaint strengthens the judicial estoppel claim with:

1. Specific reference to controlling Third Circuit precedent in Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 780-81 (3d Cir. 2001), establishing that estoppel applies to positions necessarily implied by a party's success in prior proceedings;

2. Detailed analysis of the Settlement Order (D.I. 211-2) and how the Court's approval of a settlement reducing a $4.25 million judgment to a $1 civil penalty necessarily rested upon representations that the estate lacked sufficient assets;

3. Explicit timeline showing that Defendants' current assertion regarding the $74,000 in Wells Fargo accounts directly contradicts their prior representations less than one year earlier;

4. Application of *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010), which recognizes heightened estoppel standards in the bankruptcy context where trustees occupy positions of fiduciary responsibility.

These enhancements directly counter Defendants' dismissal arguments by establishing a claim that is both legally cognizable and factually supported.

**F. Enhanced Equitable Estoppel Arguments**

The Second Amended Complaint also strengthens the equitable estoppel claim by:

1. Identifying specific misrepresentations, including the Trustee's November 2022 statement about collecting all estate funds followed by selective action on certain accounts;
2. Establishing the reasonableness of Plaintiff's reliance through multiple factors, including the Trustee's pattern of selective action, twenty-month period of inaction, and failure to notify Wells Fargo of any bankruptcy interest;
3. Documenting detrimental reliance through transfer of funds in response to Wells Fargo's notice, use of funds for legitimate business purposes, and legal expenses in defending against improper threats;
4. Citing admissions in Defendants' own Counterclaim (¶¶14-16) that they sent only one unanswered letter in December 2022, took no follow-up action until August 2024, and allowed unrestricted access throughout this period.

This enhanced equitable estoppel argument provides an independent basis for relief that directly addresses Defendants' motion to dismiss.

## G. Advancement of Judicial Economy

Permitting the proposed amendment would substantially advance judicial economy by:

1. Providing the Court with a more precise legal framework for evaluating the claims, potentially obviating the need for successive pleading iterations;
2. Clarifying the jurisdictional basis for Plaintiff's claims, potentially allowing for more efficient resolution of threshold issues;
3. Refining the legal theories to focus on those most likely to survive dismissal, potentially streamlining subsequent proceedings;
4. Presenting a more cohesive narrative connecting factual allegations to legal claims, potentially facilitating more efficient judicial review.

These efficiencies would benefit both the Court and the parties by focusing attention on substantive merits rather than technical pleading deficiencies.

## II. NO SUBSTANTIAL REASON EXISTS TO DENY LEAVE

None of the traditional factors warranting denial of leave to amend is present here:

### A. No Undue Delay or Dilatory Motive

This motion comes promptly after Plaintiff's review of Defendants' Motion to Dismiss, demonstrating diligence rather than delay. Significantly, Plaintiff is filing this motion more than one week before the deadline to respond to Defendants' Motion to Dismiss, evidencing a good faith effort to address potential pleading deficiencies expeditiously and without necessitating deadline extensions or delayed proceedings. This proactive approach underscores Plaintiff's commitment to judicial efficiency and absence of any dilatory motive.

The Third Circuit has consistently held that "delay alone is an insufficient ground to deny leave to amend." Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001). Here, Plaintiff seeks amendment at an early procedural juncture, before any discovery has commenced, before any scheduling order has been entered, and before the Court has invested substantial judicial resources in reviewing the existing pleadings. Courts in this Circuit have routinely granted amendments under such circumstances. See, e.g., Dole v. Arco Chem. Co., 921 F.2d 484, 488 (3d Cir. 1990) (finding amendment appropriate where case remained in preliminary stages); Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978) (permitting amendment where "discovery procedures were still available").

## B. No Undue Prejudice to Defendants

The proposed amendments would cause no undue prejudice to Defendants, as:

1. The case remains in its preliminary stages, with no discovery having commenced;

2. The amendments do not alter the fundamental nature of the claims but rather refine their legal foundations;

3. Defendants will have ample opportunity to respond to the amended allegations; and

4. Defendants' substantive defenses remain available and uncompromised.

The Third Circuit has emphasized that "prejudice to the non-moving party is the touchstone for the denial of an amendment." Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993). No such prejudice exists here.

**C. No Futility of Amendment**

The proposed amendments cannot be deemed futile, as they materially strengthen Plaintiff's claims by:

1. Addressing the most substantial challenges raised in Defendants' Motion to Dismiss;

2. Incorporating controlling Supreme Court, Third Circuit, and Delaware precedent;

3. Refining legal theories to align more precisely with established doctrine; and

4. Enhancing factual allegations to more clearly establish elements of each claim.

"Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Given the material enhancements outlined above, the amendments cannot be deemed futile.

# III. THE SECOND AMENDED COMPLAINT OVERCOMES DEFENDANTS' MOTION TO DISMISS

## A. The Second Amended Complaint Establishes Subject Matter Jurisdiction Despite the Barton Doctrine

Defendants' primary argument for dismissal—the Barton doctrine—is overcome by the Second Amended Complaint's enhanced jurisdictional analysis and ultra vires allegations.

First, the Barton doctrine does not apply when a trustee acts ultra vires. As the Supreme Court specifically held in Barton itself, "if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right; for in such case the receiver would be acting ultra vires." Barton v. Barbour, 104 U.S. 126, 134 (1881) (emphasis added). The Second Amended Complaint alleges precisely such wrongful taking—Defendants have, through their ultra vires threats and intimidation tactics, wrongfully seized and damaged intangible yet constitutionally protected interests belonging to Plaintiff and his family members.

Second, the Second Amended Complaint establishes that the bankruptcy court lacks subject matter jurisdiction over these claims under the "conceivable effect" test established in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). As the Third Circuit recognized in In re W.R. Grace & Co., 591 F.3d 164, 172 (3d Cir. 2009), "A

bankruptcy court's 'related to' jurisdiction cannot be limitless" (quoting Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995)). The claims in this case could not conceivably affect the administration of the bankruptcy estate and thus fall outside the bankruptcy court's "related to" jurisdiction under 28 U.S.C. § 1334(b).

Third, the Second Amended Complaint invokes Stern v. Marshall, 564 U.S. 462, 484 (2011), which established that "Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." The constitutional torts alleged here do not stem from the bankruptcy itself but from ultra vires conduct transcending legitimate bankruptcy administration.

Therefore, the Barton doctrine cannot apply to bar these claims, and this Court has proper subject matter jurisdiction.

## B. The Second Amended Complaint States Valid Claims for Gross Negligence and Breach of Statutory Duties

Defendants argue that Count I fails because they owed no duty to Plaintiff in their individual capacities. The Second Amended Complaint overcomes this argument by establishing:

1. Plaintiff maintained multiple, legally distinct relationships to the bankruptcy estate that collectively create heightened legal duties owed to him individually by Defendants, including as a concentrated equity owner, creditor, pre-petition asset assignee, released party under the Settlement Order, and beneficiary of contractual indemnification;

2. These "Aggregate Fiduciary Positions" create a special relationship recognized in bankruptcy jurisprudence, as established in In re Marvel Ent. Grp., Inc., 140 F.3d 463, 471 (3d Cir. 1998);

3. The Trustee's November 23, 2022 email (Exhibit A) creates a contemporaneous written record that either demonstrates gross negligence in failing to collect all estate property while representing he had done so or confirms his understanding that the Wells Fargo accounts were not estate property;

4. Defendants' threats of "potential criminal liability" and taunting of Plaintiff to "consult counsel" (Exhibit 3) were a calculated attempt to cover up their own gross negligence, as they failed to secure the Wells Fargo accounts for nearly two years despite knowing of their existence.

These well-pled allegations, supported by documentary evidence, state a viable claim that cannot be resolved at the motion to dismiss stage.

**C. The Second Amended Complaint States a Valid Claim for Abuse of Process**

Defendants argue that Count II fails because they took no action beyond sending demand letters. The Second Amended Complaint overcomes this argument by alleging:

1. Defendants' abuse of process extended to their procedural conduct in the bankruptcy adversary proceeding, where they misused default judgment procedures by falsely representing proper service on FourLetter LLC;

2. Defendants engaged in a coordinated pattern of procedural abuse, including expressly representing to Jordan that they would "make demand for turnover of funds from banks and other persons or entities holding funds of the Debtors" (Exhibit A), then failing to act for twenty months before abruptly changing their position;

3. When confronted with documented explanations and evidence, Defendants explicitly refused any discussion or negotiation, skipped any investigation, and jumped straight to threats, intimidation, and taunts;

4. Defendants leveraged their official authority to amplify the coercive effect of their improper threats.

These allegations go well beyond mere sharp negotiation tactics and state a viable claim for abuse of process under Delaware law.

**D. The Second Amended Complaint States a Valid Claim for Intentional Infliction of Emotional Distress**

Defendants argue that Count III fails because their conduct was not extreme and outrageous. The Second Amended Complaint overcomes this argument by alleging:

1. Concrete evidence of severe distress captured in contemporaneous video recordings showing Plaintiff's six-year-old son hyperventilating, struggling to breathe, and explicitly connecting his fear to "bad man" threats against his father;
2. Defendants knew Jordan was unrepresented, unable to afford legal representation, and vulnerable to their threats and coercion, as evidenced by their statements during the Bankruptcy Court Hearing (Case No. 22-11007-JTD, Dkt No. 229);
3. Defendants intended to inflict emotional distress, or at minimum acted with reckless disregard of the near-certain risk of such harm, by issuing threats of "criminal liability" and taunting Plaintiff to "consult counsel," fully aware of his financial ruin ($187.24), unrepresented status, and vulnerable family with three children under six (Exhibit 3);
4. Under Delaware's well-established "thin skull" or "eggshell plaintiff" doctrine, as recognized in McKeon v. Goldstein, 164 A.2d 260, 262 (Del. 1960), Defendants must take their victims as they find them.

These allegations, supported by video evidence and established Delaware law, state a viable claim for intentional infliction of emotional distress.

**E. The Second Amended Complaint States Valid Claims for All Remaining Counts**

For the reasons detailed above, and based on the enhanced factual and legal foundation provided in the Second Amended Complaint, each of the remaining counts states a viable claim that cannot be dismissed under Rule 12(b)(6).

The constitutional claims are particularly strengthened through Supreme Court precedent establishing that government officials may violate the Constitution when their actions place substantial pressure on protected religious practice, even when such pressure is indirect. Thomas v. Review Bd. of Indiana Employment Security Div., 450 U.S. 707, 718 (1981). The documented spiritual trauma inflicted on Plaintiff's six-year-old son, who explicitly questioned his faith in Jesus Christ as a direct result of Defendants' threats, states a cognizable Free Exercise claim.

Similarly, the judicial and equitable estoppel claims are now supported by specific Third Circuit precedent and Defendants' own admissions in their Counterclaim, establishing viable claims that must be addressed on their merits.

## IV. PLAINTIFF'S PRO SE STATUS WARRANTS PARTICULAR CONSIDERATION

The Supreme Court has long held that pleadings filed by pro se litigants must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972). The Third Circuit has consistently applied this principle, emphasizing that courts must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Dluhos v.

Strasberg, 321 F.3d 365, 369 (3d Cir. 2003); see also Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (pro se complaints should be liberally construed to do substantial justice).

This liberal construction is particularly warranted where, as here, a pro se plaintiff alleges constitutional violations arising from abuse of official position. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (pro se complaints alleging constitutional violations merit especially liberal construction); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) (pro se pleading "must be held to less stringent standards than formal pleadings drafted by lawyers" when alleging constitutional injury).

Permitting the proposed amendment would be consistent with this established principle of liberality toward pro se litigants, ensuring that technical pleading imperfections do not preclude consideration of potentially meritorious claims involving documented harm to a vulnerable family unit, including a minor child.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court:

1. Grant leave to file the attached Second Amended Complaint;

2. Deny Defendants' Motion to Dismiss as moot in light of the proposed amendments that cure the alleged deficiencies; and

3. Grant such other relief as the Court deems just and proper.

Respectfully submitted on March 17, 2025.

By: /s/ Joshua Jordan
Joshua Jordan, admitted pro se
6650 Rivers Ave, STE 100
Charleston, SC, 29406
Tel: 843.790.3989
joshlegalstuff@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2025, a true and correct copy of this document is being served via the CM/ECF federal courts electronic portal to the names and addresses provided by the parties.

By: /s/ Joshua Jordan
Joshua Jordan, Pro Se